UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL D. SILER,

Plaintiff,

-against-

OFFICER PEPETO MUNROE, et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

20-CV-05794 (PMH)

PHILIP M. HALPERN, United States District Judge:

Michael D. Siler ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, initiated this action under 42 U.S.C. § 1983 on July 24, 2020. (*See* Doc. 2). Plaintiff maintains in the Amended Complaint ("AC"), the operative pleading, that five employees of the New York State Department of Corrections and Community Supervision ("DOCCS")—specifically, Correction Officer Pepeto Munroe ("Munroe"), Correction Officer Edwin Lopez ("Lopez"), Correction Officer J. Walden ("Walden"), Superintendent Leroy Fields ("Fields"), and Acting DOCCS Commissioner Anthony J. Annucci ("Annucci," and collectively, "Defendants")—violated his constitutional rights during his incarceration in the Special Housing Unit ("SHU") at Fishkill Correctional Facility ("Fishkill") in late 2019 and early 2020. (*See* Doc. 30, "AC").

Defendants filed a motion seeking partial dismissal of the AC on March 5, 2021. (Doc. 43; Doc. 44, "Def. Br."). Plaintiff opposed the motion by a "countermotion" seeking denial of Defendants' motion filed on April 16, 2021 (Doc. 48, "Opp."), and the motion was briefed fully with the filing of Defendants' reply memorandum of law in further support of their motion on May 17, 2021 (Doc. 51, "Reply Br.").

For the reasons set forth below, Defendants' motion is GRANTED IN PART.

**BACKGROUND**

I. Munroe: Interfering with Legal Mail

Plaintiff fought with Walden on December 11, 2019. (AC at 3, 8-9).[1] Later that day, after the fight, Plaintiff gave Munroe legal mail to be sent to the U.S. District Court for the Northern District of New York ("Northern District").[2] (*Id*. at 3, 13). Munroe took the mail and stated, "Your mail ain't going out since you like to get into physical altercations with my friends." (*Id*.).

Plaintiff insists that Munroe threw the envelope away, but admits that after his conversation with Munroe, he received a notification from the Northern District that the mailing had been received. (*Id*.).

II. Lopez: Using Excessive Force During a Cell Extraction

At 7:20 a.m. on January 30, 2020, Plaintiff was charged with assaulting Officer Brown ("Brown"). (*Id*. at 4). About eight hours later, Lopez extracted Plaintiff from his cell. (*Id*.). Lopez, as part of the extraction, cuffed Plaintiff's hands behind his back while Plaintiff was laying facedown on a bed. (*Id*.). After cuffing Plaintiff, Lopez yanked Plaintiff's right leg and pulled Plaintiff off the bed. (*Id*.). Plaintiff was unable to use his hands and had no support beneath him; as a result, Plaintiff's head hit the floor. (*Id*.). Plaintiff was transported to a local hospital and received six stitches. (*Id*.).

Plaintiff alleges that, after letting his head hit the floor, Lopez made a comment to the effect that the injury was "for" Brown. (*Id*.).

---

[1] For ease of reference, citations to the AC and Opp. correspond to the pagination generated by ECF.

[2] Based upon the information provided by Plaintiff, it appears that the litigation in the Northern District refers to the action entitled *Siler v. Fletcher*, No. 19-CV-00427. Magistrate Judge Thérèse Wiley Dancks, on December 17, 2021, issued a Report and Recommendation recommending that defendants' motion for summary judgment in that proceeding be denied.

III. Fields: Failing to Address Plaintiff's Complaints

The next day, January 31, 2020, Plaintiff complained in-person to Fields that he had been the target of retaliation following grievances submitted on September 30, 2019, October 3, 2019, October 20, 2019, and December 12, 2019. (*Id*. at 4-5). Specifically, Plaintiff told Fields that he had been assaulted by staff and that officers had been making his "living conditions harsh and extreme" every day. (*Id*. at 5). Plaintiff insists that, aside from this interaction, Fields knew about the living conditions because Plaintiff had appealed his grievances to Fields. (*Id*.).

Fields' only comment to Plaintiff on January 31, 2020 was, "Well, you made your bed. Now you have to be a man and lay in it. Because you deserve the treatment you're getting." (*Id*.).

IV. Walden: Interfering with Food and Using Excessive Force

Walden, on April 11, 2020, served Plaintiff with a lunch tray that fell below the recommended serving size. (*Id*. at 7). Walden shorted Plaintiff's tray, according to Plaintiff, in retaliation for unidentified "grievances" that Plaintiff filed against "most of the officers that work at Fishkill" and his various assaults on staff. (*Id*.). Plaintiff claims also that, at some point, Walden put "metal scrap[]s in [his] food trays." (*Id*. at 9).

While the context is unclear, Plaintiff was extracted from his cell by unidentified officers that same day because he refused to "give [his] food or razor back." (*Id*. at 7-8). After being subdued, Walden punched Plaintiff with a closed fist four times on the right side of the face. (*Id*. at 8). Plaintiff ended up with a two-inch cut on his face and a bleeding earlobe. (*Id*.).

Plaintiff maintains that, as Walden landed his punches, the officer declared, "I told you I would get even with you for assaulting me in December." (*Id*.).

V. Annucci: Denying Plaintiff's Request for Transfer to a Different Facility

On December 24, 2019—specifically because of Plaintiff's December 11, 2019 fight with Walden—Plaintiff's SHU counselor sought Plaintiff's transfer out of Fishkill. (*Id*. at 5). Annucci denied the request. (*Id*.). This decision, according to Plaintiff, "caused" Plaintiff to get into fights with officers (specifically, those January 30, 2020 interactions with Brown and Lopez, discussed previously). (*Id*. at 6). Plaintiff asserts that when Annucci made the decision denying the transfer request, Annucci was already on notice of the conditions of Plaintiff's confinement via two letters Plaintiff mailed Annucci on September 30, 2019 and October 20, 2019. (*Id*. at 5-6).

Notwithstanding Annucci's initial determination, Plaintiff claims that his SHU counselor informed him—on or about March 3, 2020—that the transfer had been approved. (*Id*. at 6). Another DOCCS employee advised Plaintiff that he would be moved on March 13, 2020. (*Id*.). The move never happened, however, because Annucci removed Plaintiff from the transfer list "for no apparent reason." (*Id*. at 7). Plaintiff insists that Annucci's failure to follow through with the transfer in March caused Plaintiff to be assaulted on April 11, 2020. (*Id*.).

**STANDARD OF REVIEW**

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[*p*]*ro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true

all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

Plaintiff proceeds under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (alteration in original)). The purported violations here stem from the First, Eighth, and Fourteenth Amendments. (AC at 8-12).

### I. First Amendment Retaliation Claim: Munroe, Lopez, and Walden

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action." *Randle v. Alexander*, No. 10-CV-09235, 2011 WL 1226228, at *2

(S.D.N.Y. Mar. 22, 2011) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (alteration in original)). An action is "adverse" when it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . ." *Ruggiero v. Cty. of Orange*, No. 19-CV-03632, 2020 WL 5096032, at *7 (S.D.N.Y. Aug. 28, 2020) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). Conduct short of this standard is "simply *de minimis* and . . . outside the ambit of constitutional protection." *Id*. (quoting *Davis*, 320 F.3d at 353). As for the third element, the "allegations must support an inference that the protected conduct was 'a substantial or motivating factor for the adverse actions taken by prison officials.'" *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)). Bearing in mind that "[c]ourts properly approach prisoner retaliation claims with skepticism and particular care[] because virtually any adverse action taken against a prisoner by a prison official . . . can be characterized as a constitutionally proscribed retaliatory act," *Davis*, 320 F.3d at 352 (internal quotation marks omitted), and "[c]onclusory allegations will not suffice; instead, a prisoner's claim for retaliation must be supported by specific and detailed factual allegations." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 517 (S.D.N.Y. 2012) (internal quotation marks omitted).

Plaintiff presses a claim for First Amendment Retaliation based upon his: (1) December 11, 2019 interaction with Munroe; (2) January 30, 2020 interaction with Lopez; and (3) April 11, 2020 interaction with Walden. (AC at 8-9). None of these events supports such a claim because—according to Plaintiff—each incident was in retaliation for one of Plaintiff's prior attacks on corrections officers. (*See id*. at 3 ("Munroe took my mail. And stated to me 'Your mail ain't going out since you like to get into physical altercations with my friends.'"), 4 ("Lopez stated to me[,] 'Yea that's for Officer Brown . . . .'"), 8 ("Walden stated to me[,] while punching me in the face, 'I told you I would get even with you for assaulting me in December.'")). Attacking corrections

officers is not a protected activity and cannot serve as the basis for a First Amendment retaliation claim. *Walker v. LaValley*, No. 12-CV-00807, 2014 WL 4744735, at *13 (N.D.N.Y. Sept. 23, 2014) ("Walker's previous assault on Green Haven's DSS is not protected conduct."); *Reeder v. Hogan*, No. 09-CV-00520, 2010 WL 3909050, at *5 (N.D.N.Y. Sept. 30, 2010) ("[A]ttempting to assault correctional officers is not protected conduct under the First Amendment . . . ."); *see also Porter v. Goord*, No. 04-CV-00485, 2009 WL 2180580, at *7 (W.D.N.Y. July 22, 2009) (granting summary judgment on First Amendment claim where plaintiff claimed officials assaulted him "for throwing food items at and making an obscene remark" to a DOCCS counselor), *aff'd sub nom. Potter v. Goord*, 415 F. App'x 315 (2d Cir. 2011); *cf. Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993) ("[A] physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment.").[3]

---

[3] Plaintiff's First Amendment retaliation claim vis-à-vis Walden could be read so broadly as to suggest that, in response to unspecified grievances, Walden: (1) failed to provide Plaintiff with a full tray of food; (2) tampered with Plaintiff's food; and (3) used excessive force against Plaintiff. (*See* AC at 9). Indeed, Plaintiff's opposition brief—after Defendants' explanation of protected conduct and causation—doubles down on the theory that Plaintiff filed grievances against Walden (and other officers), that Walden knew about the grievances, and that *all* of Walden's April 11, 2020 actions were in retaliation for those grievances. (Opp. at 7-10). The Court may consider factual allegations raised for the first time in a *pro se* party's opposition brief when the allegations are consistent with the facts presented in the pleading. *Jackson v. Polizzi*, No. 20-CV-03105, 2021 WL 5909979, at *4 n.3 (S.D.N.Y. Dec. 13, 2021). Accepting Plaintiff's theory as consistent with the facts pled in the AC, a First Amendment claim based on the protected activity of filing grievances would still fail for two reasons. First, Plaintiff offers no factual predicate for the conclusion that any of Walden's behavior was caused by the grievances beyond simply saying so, and "a First Amendment retaliation claim must be supported by specific and detailed factual allegations and not stated in wholly conclusory terms." *Gunn v. Malani*, No. 20-CV-02681, 2021 WL 5507057, at *6 (S.D.N.Y. Nov. 23, 2021) (internal quotation marks omitted); *see also Vogelfang*, 889 F. Supp. 2d at 517. There are no such allegations here. Second, even if Plaintiff sought to rely on temporal proximity between the last complaint (i.e., December 12, 2019) and the adverse action (i.e., April 11, 2019), that timeframe—four months—is too long, standing alone, to state plausibly a causal connection. *See Sloane v. Mazzuca*, No. 04-CV-08266, 2006 WL 3096031, at *14 (S.D.N.Y. Oct. 31, 2006) (outlining the four-factor test from which a court may infer motive in an inmate's First Amendment retaliation claim and observing that a lapse of four months "strongly suggests that there is no causal connection between . . . events"). Insofar as Plaintiff might seek to state some type of claim against Walden based on food tampering—perhaps under the Eighth Amendment—the allegations are too conclusory to pass muster at this stage and, in any event, lack any purported injury. *Gomez v. Westchester Cty.*, No. 18-CV-00244, 2021 WL 4443379, at *9 (S.D.N.Y. Sept. 28, 2021) ("[F]or a claim related to food to survive, a plaintiff must allege that he . . . suffered a distinct and palpable injury." (internal quotation marks omitted)).

Plaintiff's First Amendment claims are therefore dismissed. As this is the only claim for relief pressed against Munroe, Munroe is, accordingly, dismissed from this action in its entirety.[4]

II. Fourteenth Amendment Claim: Annucci

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1. "[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Arriaga v. Otaiza*, No. 20-CV-06992, 2021 WL 5449849, at *6 (S.D.N.Y. Nov. 19, 2021) (quoting *Joseph v. Cuomo*, No. 20-CV-03957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021) (alterations in original)); *see also Velazquez v. Gerbing*, No. 18-CV-08800, 2020 WL 777907, at *9 (S.D.N.Y. Feb. 18, 2020).

Plaintiff complains that Annucci violated the Fourteenth Amendment by refusing to transfer Plaintiff out of Fishkill. (AC at 11-12). "Inmates, however, have no right to be housed in a correctional facility of their choosing." *Tolliver v. Jordan*, No. 19-CV-11823, 2021 WL 2741728, at *8 (S.D.N.Y. July 1, 2021). "Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than in another does not itself signify that a Fourteenth

---

[4] The Court notes that "[i]nterference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis*, 320 F.3d at 351. "This right is violated if a prison 'regularly and unjustifiably' interferes with a prisoner's legal mail." *McFadden v. Noeth*, 827 F. App'x 20, 29-30 (2d Cir. 2020) (quoting *Ahlers v. Rabinowitz*, 684 F.3d 53, 64 (2d Cir. 2012)). On these facts, to the extent Plaintiff could be understood to complain about Munroe's "interference" with legal mail as a standalone claim, no claim exists because the mail *arrived at its destination* and there is no suggestion the mail was late or this somehow prejudiced his ability to pursue his case in the Northern District. *See id.* at 30 ("Examples of unjustifiable interference include . . . delaying the delivery of mail to a prisoner in a way that 'cause[s] him to miss court deadlines or in any way prejudice[s] his legal actions.'" (quoting *Davis*, 320 F.3d at 351-52) (alterations in original)); *Gonzalez-Torres v. Roy*, No. 19-CV-01139, 2020 WL 5994960, at *7 (D. Conn. Oct. 9, 2020) ("A delay in the inmate's ability to work on a legal action or communicate with the courts, however, is not a sufficient basis for a constitutional violation.").

Amendment liberty interest is implicated" when a prisoner disagrees with his placement in a facility. *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir. 1998) (recognizing that an inmate "has no liberty interest in remaining at a particular correctional facility"). Indeed, the Supreme Court has held that an inmate "has no justifiable expectation that he will be incarcerated in any particular prison within a State" and has no constitutional right to be transferred from one facility to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983). Inmate transfers between prisons do not "involve an interest independently protected by the Due Process Clause." *Leneau v. Ponte*, No. 16-CV-00776, 2018 WL 566456, at *13 (S.D.N.Y. Jan. 25, 2018); *see also Torrez v. Dep't of Corr.*, No. 17-CV-01223, 2017 WL 3841681, at *4 (D. Conn. Sept. 1, 2017) ("Torrez . . . has no constitutional right to be housed in any particular correctional facility.").

As such, Plaintiff cannot plausibly plead that he possessed a liberty interest in being denied a transfer out of Fishkill.[5] The claim against Annucci for refusing to transfer him out of Fishkill is, consequently, dismissed.

III. Eighth Amendment Claims: Fields, Annucci, and Lopez

As for the final claims Defendants seek to dismiss, Plaintiff proceeds under the Eighth Amendment by way of two theories.[6] First, Plaintiff complains that Fields and Annucci were deliberately indifferent to the fact that the conditions of his confinement posed a risk to his health

[5] Defendants claim that Plaintiff objected to "being transferred from Woodbourne Correctional Facility to Riverview Correctional Facility" as a violation of his constitutional rights. (Def. Br. at 17). There is no mention of these facilities in the pleading. (*See generally* AC).

[6] Plaintiff's claims are governed by the Eighth Amendment because he is a convicted prisoner. First, Plaintiff pled affirmatively that he is a "convicted and sentenced state prisoner." (AC at 1). Second, Plaintiff provided his Department Identification Number or "DIN." (*Id*.). Searching Plaintiff's DIN (18-B-0821) on the DOCCS inmate lookup website, Plaintiff was convicted of Robbery in the First Degree, Robbery in the Second Degree, and Criminal Possession of a Weapon in the Second Degree. *See Simmonds v. Family Dollar Store*, No. 18-CV-01241, 2018 WL 5447046, at *1 n.1 (E.D.N.Y. Oct. 25, 2018) ("The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information."); *Jackson v. Sullivan Cty.*, No. 16-CV-03673, 2018 WL 1582506, at *5 n.8 (S.D.N.Y. Mar. 27, 2018).

and safety. (AC at 10-11). Second, he accuses Lopez of using excessive force against him during the January 30, 2020 cell extraction. (*Id*. at 9-10). As these are separate theories of liability with different elements required to state a claim, the Court addresses them separately.

A. Conditions of Confinement Theory

The Eighth Amendment instructs that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Supreme Court has explained that the Eighth Amendment requires that prison officials "provide humane conditions of confinement," which include making sure "that inmates receive adequate food, clothing, shelter, and medical care, and . . . tak[ing] reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted). In order to state a claim for relief where, as here, liability is based on a theory that "the conditions of . . . confinement constitute[d] cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted).

Under the first step of the analysis, conditions of confinement are objectively serious if the plaintiff can show that "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). This assessment is not "static," as "[t]he conditions themselves must be evaluated in light of contemporary standards of decency." *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995). At the motion to dismiss stage, the Court must determine whether the plaintiff's allegations lead to the plausible inference that the plaintiff was "deprived of [his] basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety" or was "exposed to conditions that pose[d] an unreasonable risk of serious damage to [his] future health." *Jabbar v. Fischer*, 683 F.3d 54, 57

(2d Cir. 2012) (internal quotation marks omitted). As for the second step of the analysis, the subjective element, a defendant:

> cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017) (quoting *Farmer*, 511 U.S. at 837); *see also Reyes v. Wenderlich*, 779 F. App'x 55, 56 (2d Cir. 2019) (noting that a plaintiff "must demonstrate that, subjectively, prison staff acted with deliberate indifference . . . in failing to address the purported danger" (internal quotation marks omitted)).

Of course, "[t]o establish a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted). The fact that a defendant is a supervisor is not enough to impute personal involvement onto that person; liability requires, rather, that the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Given this prerequisite, Plaintiff implicates neither Annucci nor Fields in an Eighth Amendment conditions of confinement claim.[7]

[7] Plaintiff insists also that both Fields and Annucci are personally involved in the alleged constitutional violations by operation of *respondeat superior*. (*See generally* Opp. Br. at 18-26). While supervisors may well be implicated in their subordinates' constitutional violations, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Acosta v. Thomas*, 837 F. App'x 32, 35 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

With respect to Annucci, the only connection between him and any constitutional violation—aside from refusing Plaintiff a transfer, which, as discussed already, does not implicate a constitutional right—is that he was aware of Plaintiff's grievances. (*See* AC at 5-7, 11; *see also* Opp. at 11). Such a role is insufficient to establish personal involvement because "receipt of letters or grievances, by itself, does not amount to personal involvement." *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010); *see also Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (commissioner's receipt of letters from an inmate insufficient to establish personal involvement); *McIntosh v. United States*, No. 14-CV-07889, 2016 WL 1274585 at *16 (S.D.N.Y. Mar. 31, 2016) ("[M]ere receipt of a complaint or grievance from an inmate is insufficient to establish personal involvement . . . ."); *Malik v. City of New York*, No. 11-CV-06062, 2012 WL 3345317, at *15 (S.D.N.Y. Aug. 15, 2012) ("The only factual basis for this allegation, however, is that Malik wrote . . . Argo . . . regarding his grievances. This allegation is insufficient to make out a *prima facie* claim of personal involvement . . . ." (internal citations omitted)), *adopted by* 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012); *Higgins v. Artuz*, No. 94-CV-04810, 1997 WL 466505, at *7 (S.D.N.Y. Aug. 14, 1997) (Sotomayor, J.) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." (internal citations and quotation marks omitted)); *Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y.1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability.").

As for Fields, Plaintiff argues that Fields was personally involved in the alleged constitutional violations because Plaintiff complained to Fields about his treatment at Fishkill in-person on January 31, 2020. (AC at 4-5, 10-11; Opp. at 12, 20-21).[8] That conversation cannot,

[8] Plaintiff maintains also that Fields' personal involvement is established because he received Plaintiff's grievance appeals. (AC at 4-5). This argument, as it did with Annucci, fails. (*See* discussion *supra*).

however, link Fields to conduct predating the interaction or violations that were not ongoing. *See Hernandez v. Daniels*, No. 14-CV-05910, 2016 WL 4987155, at *3 (S.D.N.Y. Sept. 14, 2016) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to remedy a violation." (quoting *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008)); *Morgan v. Ward*, No. 14-CV-07921, 2016 WL 427913, at *8 (S.D.N.Y. Feb. 2, 2016) (same); *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) ("After the fact notice of a violation of an inmate's rights is insufficient to establish a supervisor's liability for the violation. Receiving *post hoc* notice does not constitute personal involvement in the unconstitutional activity . . . ."). To the extent Plaintiff suggests that his January 31, 2020 conversation implicates Fields in Walden's April 11, 2020 behavior, Plaintiff did not plead that he identified an ongoing threat posed by Walden. *See, e.g.*, *Ford v. Martuscello*, No. 14-CV-01566, 2017 WL 4181385, at *8 (N.D.N.Y. July 20, 2017) ("[S]upervisory officials may only be liable by failing to cure a constitutional violation after learning about it if it was ongoing and they had a reasonable opportunity to prevent future violations."), *adopted by* 2017 WL 4155358 (N.D.N.Y. Sept. 18, 2017); *Burton v. Lynch*, 664 F. Supp. 2d 349, 362 (S.D.N.Y. 2009) (finding, on summary judgment, that the superintendent was not personally involved where the plaintiff's complaint made "no reference[] to any continued threat of injury").

As Plaintiff failed to plead facts establishing that either Fields or Annucci were personally involved in any Eighth Amendment violation, the claim for relief pressed against them under this theory must be dismissed.

B. Excessive Force Theory

"A prison official's use of force violates the Eighth Amendment when, objectively, 'the alleged punishment [was] . . . sufficiently serious,' and, subjectively, 'the prison official . . . [had]

a sufficiently culpable state of mind.'" *Torres v. City of New York*, No. 17-CV-06604, 2019 WL 7602181, at *6 (S.D.N.Y. Aug. 14, 2019) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (alterations in original)), *adopted by* 2019 WL 4784756 (S.D.N.Y. Sept. 30, 2019)). "The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of contemporary standards of decency." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (internal quotation marks omitted). The Court, in assessing this component, must ask whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Id*. (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). "The subjective component of the claim requires a showing that the defendant 'had the necessary level of culpability, shown by actions characterized by wantonness' in light of the particular circumstances surrounding the challenged conduct." *Id*. (quoting *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)). "When prison officials are accused of using excessive force, the 'wantonness' issue turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*. (quoting *Hudson*, 503 U.S. at 7).

Of course, in evaluating an excessive force claim, courts must also bear in mind that "[n]ot every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (internal quotation marks omitted), and "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id*. at 9-10 (internal quotation marks omitted). However, "[w]hen prison officials maliciously and sadistically use force to cause harm, a plaintiff need not demonstrate

significant injury because, in those circumstances, contemporary standards of decency always are violated. Thus, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se*." *Greenburger v. Roundtree*, No. 17-CV-03295, 2020 WL 6561598, at *4 (S.D.N.Y. Jan. 16, 2020) (internal citations and quotation marks omitted), *adopted by* 2020 WL 4746460 (S.D.N.Y. Aug. 16, 2020); *see also Wright*, 554 F.3d at 269 ("[W]here a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically, our Court has reversed summary dismissals of Eighth Amendment claims of excessive force even where the plaintiff's evidence of injury was slight and the proof of excessive force was weak."); *White v. Marinelli*, No. 17-CV-01094, 2019 WL 1090802, at *10 (N.D.N.Y. Mar. 8, 2019) ("Prison guards may not use force in such a way—maliciously and sadistically to cause harm—even if they cause only minor injuries (or, for that matter, no injuries). Such physical assaults by guards to humiliate an inmate, or in retaliation for past conduct, violate the Eighth Amendment." (internal citations and quotation marks omitted)).

Plaintiff's pleading meets both prongs here. First, the Court concludes that the force used was, so far as the facts pled suggest, objectively harmful enough to violate the Eighth Amendment. *Cf. Rosario v. Nolan*, No. 16-CV-00228, 2021 WL 2383769, at *2 (W.D.N.Y. Mar. 22, 2021) (concluding, on motion for summary judgment in a failure to protect case, that "plaintiff's laceration on the face, requiring stitches, is sufficiently serious to satisfy the objective prong of an Eighth Amendment claim"); *Goldston v. Albany Cty. Sheriff Dep't*, No. 02-CV-01004, 2006 WL 2595194, at *7 (N.D.N.Y. Sept. 11, 2006) (finding, on motion for summary judgment in a deliberate indifference to serious medical needs case, that "a two-centimeter deep laceration . . . that required six stitches to close" was "sufficiently serious for constitutional purposes"). As for

the subjective prong, there can be no dispute that on the facts pled—i.e., that Lopez wanted to even the score between Plaintiff and another officer—the force was used maliciously. *See White*, 2019 WL 1090802, at *10 (force used "in retaliation for past conduct" violates the Eighth Amendment).[9]

In light of the foregoing, the Court concludes that Plaintiff has pled facts sufficient to state an excessive force claim under the Eighth Amendment against Lopez. Defendants' motion to dismiss this claim for relief against Lopez is, accordingly, denied.

## CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss is GRANTED IN PART, and the First Amendment claims, the Fourteenth Amendment claim, and the Eighth Amendment claims against Annucci and Fields are dismissed. What remains of the AC, then, are the Eighth Amendment excessive force claims against Lopez and Walden. These two claims shall proceed to discovery. Lopez and Walden are directed to serve and file an Answer within fourteen days of the date of this Order. The Court will issue a Notice of Initial Pretrial Conference shortly.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 43, terminate Munroe, Annucci, and Fields from the docket in this action, and mail a copy of this Memorandum Opinion and Order to Plaintiff.

**SO ORDERED:**

Dated: White Plains, New York
December 22, 2021

PHILIP M. HALPERN
United States District Judge

[9] Plaintiff's Eighth Amendment claim for excessive force based on his interaction with Walden on April 11, 2020 was not a subject of Defendants' motion. (*Compare* AC at 10, *with* Def. Br.). Plaintiff's Eighth Amendment excessive force claim against Walden shall, therefore, proceed into discovery.